UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

2001 JUN 13  A 9: 55

CIVIL ACTION
NO.            DISTRICT COURT
               DISTRICT OF MASS.

STANDEX INTERNATIONAL
CORPORATION
        Plaintiff,

v.

CRANE & COMPANY and
ROLLER DESIGN, INC.
        Defendants.

# 01-30105-MAP

RECEIPT # 304539
AMOUNT $ 150.00
SUMMONS ISS. _____
LOCAL RULE 4.1 _____
WAIVER OF SERV. _____
MCF ISSUED _____
AO 120 OR 121 _____
BY DPTY CLK _____ MGL
DATE 6/13/01

## COMPLAINT AND JURY DEMAND

### PARTIES AND BACKGROUND

    1.   Standex International Corporation is a Delaware corporation, having its executive offices in Salem, New Hampshire.

    2.   B.F. Perkins ("Perkins"), is an unincorporated division of Standex International Corporation, having its principal place of business at 701 Jefferson Road, Rochester, New York.

    3.   Roller Design, Inc. ("Roller Design") is a Wisconsin corporation having its principal place of business at West224 South8535 Industrial Avenue, Big Bend, Wisconsin.

    4.   Crane & Company ("Crane") is a Massachusetts corporation having its principal place of business at 30 South Street, Dalton, Massachusetts.

    5.   In August, 1999, Perkins agreed to provide a calender machine to Crane for the sum of $630,000.

    6.   The calender machine was designed to contain two electrically heated rolls.

DOCKETED

(1)

7.    Perkins sub-contracted with Roller Design for the manufacture of the electrically heated rolls.

8.    Perkins then sub-contracted with Polyplating, Inc. to plate the rolls.  Polyplating operates out of Chicopee, Massachusetts.

9.    Crane elected to have Roller Design provide installation, inspection, testing and other services for the calender machine and, upon information and belief, the following occurred:

a.    On or about March 4, 2000, Roller Design began the testing and installation process for said machine.

b.    Due to Roller Design's negligent failure to perform its duties and other conduct in breach of its express and implied contractual undertakings, one of the rolls allegedly failed electrical continuity testing, thus not satisfying Crane's specifications.

c.    Crane or Roller Design concluded that there were sources of moisture in the roller.

d.    Without consulting Perkins, Crane and Roller Design personnel chose a method to dry the cores of the roll to dissipate the moisture within.

e.    Crane and Roller Design personnel constructed an open flame plywood "oven" surrounding the roll.

f.    Employees of Roller Design and Crane exclusively conceived, undertook and supervised the drying process.

g.    On or about March 8, 2000, at approximately 1:00 a.m., Roller design employees who were supervising the drying process left Crane's facility.

h.    At that time, Crane employees began supervising the drying process.

i.    Shortly after 1:00 a.m., on or about March 8, 2000, a Crane employee removed smoldering wood from the area where the oven was created and placed it nearby.

j.   At some point shortly thereafter, the roll was left unattended and a fire started.

k.   The fire caused damage to the calender rolls and other components of the machine.

l.   The rolls were returned to Roller Design for repair.

10.   Perkins issued a purchase order to Roller Design to address the repairs required by the acts, omissions and contract breaches of Roller Design and Crane.

11.   On August 23, 2000, Roller Design informed Perkins that it was unable to satisfy the specifications of the purchase order.

12.   Roller Design failed to provide conforming goods.

13.   Perkins paid Roller Design $173,600.00 for what have proven to be non-conforming goods.  It has not received a corresponding benefit for this consideration.

14.   Perkins has incurred expenses of $73,527.32 in repair costs to the machine for the benefit of Crane & Co.

15.   Upon information and belief, Crane acquired replacement electrically heated rolls for the calender machine from another entity.

16.   Upon information and belief, the calender machine for which Crane contracted Perkins to provide has been operational and used for its intended purposes since on or about September 9, 2000.

17.   Perkins has not received full or appropriate payment from Crane due under the contract for the calender machine or for the value of goods and services it provided.

## JURISDICTION AND VENUE

18.   Jurisdiction is based on 28 U.S.C. § 1332(a), in that the matter in controversy exceeds the sum or value of Seventy Five Thousand ($75,000) Dollars exclusive of interest and costs and it is a dispute between citizens of different states.

19.   Venue is based on 28 U.S.C. § 1391, in that a substantial part of the events giving rise to the matter in controversy took place in this district.

## COUNT I

### BREACH OF CONTRACT BY CRANE

20.   Perkins repeats, re-alleges and incorporates herein by reference Paragraphs 1-19.

21.   Perkins contracted with Crane to provide a calender machine.

22.   The calender machine has been fully operational since September 9, 2000 and is now used by Crane.

23.   Perkins is not responsible for any delays in the roll delivery and/or the damage resulting from the March 8, 2000 fire at Crane.

24.   Crane has breached its contract with Perkins by (1) not paying for the calender machine or (2) permitting Crane an appropriate opportunity to cure.  Consequently, Crane has sustained financial damage.

## COUNT II

### BREACH OF CONTRACT BY ROLLER DESIGN

25.   Perkins repeats, re-alleges and incorporates herein by reference Paragraphs 1-24.

26.   Perkins contracted with Roller Design for the manufacture of two electrically heated rolls to fulfill its contract with Crane.

27.   Roller Design failed to provide appropriate and conforming goods.

28.   Roller Design was permitted an opportunity to cure its defective goods and did not do so.

29.   Upon information and belief, Crane has refused to accept the rolls made and installed by Roller Design due to its inability to provide appropriate and conforming goods.

30.   Upon information and belief, Crane obtained replacement rolls from a third party.

31.   Perkins paid Roller Design $173,600 for the rolls, which have proven non-conforming.

32.   Perkins incurred product repairs costs of $73,527.32 due to Roller Design's contract breach and failure to perform.

33.   The repair costs incurred by Perkins are a direct consequence of Roller Design's failure to provide goods conforming with its express and implied obligations, including without limitation, Purchase Order Numbers 32068 and 33647.

34.   Roller Design breached its contract with Perkins by failing to furnish rolls conforming with the terms of its agreement and the purchase orders issued by Perkins. Consequently, Perkins has sustained financial damage.

## COUNT III

### NEGLIGENCE BY CRANE

35.   Perkins repeats, re-alleges and incorporates herein by reference Paragraphs 1-34.

36.   Crane elected to have Roller Design provide various services in connection for the machine and, upon information and belief, the following occurred:

a.   On or about March 4, 2000, Roller Design began providing testing, inspection, installation and other services to Crane.

b.   Employees of Roller Design and Crane constructed an open flame plywood oven to facilitate the drying of one of the rolls because of a moisture problem perceived during testing.

c.   Crane assumed any and all responsibility for management of the roll installation and drying process.

d.   Crane did not consult with Perkins concerning the perceived moisture problem or means of abatement.

e.   Crane knew or should have known that the plywood oven it or Roller Design had erected was unsafe.

f.   On or about March 8, 2000, at approximately 1:00 a.m., Crane employees were solely responsible for supervising the drying process.

g.   At some point shortly after 1:00 a.m., Crane employees left the oven unattended.

h.   A fire started while the oven and drying process were in the exclusive control of Crane.

i.   The fire caused damage to the rolls and components of the calender machine.

37.  Crane owed a duty of reasonable care to Perkins with respect to the calender machine and rolls.

38.  Crane breached its duty by constructing and employing an unsafe or inappropriate heating element.

39.  Crane further breached its duty by, inter alia, abandoning its supervision of the drying process.

40.  Perkins in no way endorsed, suggested, recommended, encouraged or participated in Crane's negligent conduct.

41.  Perkins has incurred actual and consequential damages as result of Crane's negligence, including but not limited to tangible damage to the machine, repair costs, unpaid sums owed under contract, and other forms of financial damage.

## COUNT IV

### NEGLIGENCE BY ROLLER DESIGN

42.  Perkins repeats, re-alleges and incorporates herein by reference Paragraphs 1-41.

43. Roller Design negligently designed, made, marketed, tested, inspected, sold and installed the subject rolls.

44. Roller Design knew or should have known that the plywood oven it erected to dry the non-conforming rolls was unsafe.

45. Upon information and belief, Roller Design employees negligently started and supervised the drying process.

46. Upon information and belief, a fire ensued after Roller Design abandoned the oven. The fire caused tangible damage to the calender machine and the rolls.

47. Roller Design owed a duty of reasonable care to Perkins and Crane to provide conforming rolls and to protect the machine and the rolls during the installation, inspection and testing process.

48. Roller Design breached its duties by constructing and employing an unsafe heating element.

49. Roller Design also breached its duties by, inter alia, abandoning its supervision of the drying process.

50. Perkins in no way endorsed, suggested, recommended or encouraged such action.

51. Perkins has incurred actual and consequential damages as result of Roller Design's negligence.

## COUNT V

### QUANTUM MERUIT

52. Perkins repeats, re-alleges and incorporates herein by reference Paragraphs 1-51.

53. Perkins provided valuable services, materials and goods to Crane.

54. Crane has accepted, used and enjoyed said services, materials and goods as the subject calender machine has been fully operational since approximately September 9, 2000.

55.   Perkins has notified Crane it expects to be paid for said services, materials and goods.

56.   As Crane has not paid Perkins for the calender machine or for the value of the goods or services provided, it has been unjustly enriched.

57.   Crane has been unjustly enriched at the expense of Perkins and must make restitution.

## REQUESTS FOR RELIEF

WHEREFORE, Standex International Corporation, as owner of its division known as B.F. Perkins demands:

1.   An award in the amount of $319,000.00 against Crane and Company, representing the amount of the balance of contract between Perkins and Crane for the four roll calender system;

2.   An award in the amount of $173,600.00 as against Roller design, Inc., representing the amount paid by Perkins to Roller Design for the non-conforming rolls;

3.   An award in the amount of $73,527.32 as against Roller Design. Inc., representing the repair costs incurred by Perkins;

4.   All appropriate compensatory and consequential damages as to each defendant as is appropriate;

5.   Sufficient damages to undo Crane's unjust enrichment;

6.   Counsel fees, costs and statutory interest as against each defendant as appropriate.

7.   Such other relief as the Court deems just.

THE PLAINTIFF DEMANDS A TRIAL BY JURY

STANDEX INTERNATIONAL
CORPORATION
By its attorney

David M. O'Connor
BBO No. 544166
O'CONNOR & ASSOCIATES
100 State Street, 4th Flr.
Boston, MA 02109
(617) 723-7201